**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SABRINA J.,
  ON BEHALF OF K.A.T.,

            Plaintiff,

      v.

FRANK BISIGNANO,
  COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

No. 24 CV 8401

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Plaintiff Sabrina J. appeals the Commissioner of Social Security's decision determining that the minor claimant, K.A.T., was no longer disabled as of March 1, 2023. For the following reasons, plaintiff's motion for summary judgment [29] is granted, defendant's motion for summary judgment [36] is denied, and the case is remanded for further administrative proceedings.[1]

### Background

In April 2017, the Social Security Administration (SSA) found that K.A.T. was disabled as of December 27, 2016. [26-1] 14. The SSA determined that K.A.T.'s impairments functionally equaled a listed impairment because K.A.T. had marked limitations in two functional domains: interacting and relating with others and caring for himself. [*Id.*] 17-18. The SSA reviewed K.A.T.'s continuing eligibility for disability benefits and determined that, as of October 2022, K.A.T. was no longer disabled. [*Id.*] 16. That determination was upheld by a state agency disability hearing officer and by an administrative law judge (ALJ). [*Id.*]. The Appeals Council denied review in July 2024, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [26], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [22].

**Legal Standard**

The Social Security Administration uses a three-step process to determine whether a disabled child continues to qualify for benefits. *See* 20 C.F.R. § 416.994a.

At step one, the ALJ determines whether there has been medical improvement in the child's impairment(s) since the comparison point decision. 20 C.F.R. § 416.994a(b)(1). The "comparison point decision," or CPD, refers to the "most recent favorable determination of disability." *Cox v. Comm'r of Soc. Sec.*, Case No. 1:24-CV-372-CCB-SJF, 2025 WL 2717181, at *1 (N.D. Ind. Sept. 22, 2025). At step two, "if the CPD (like the one here) was made on or after January 2, 2001, and was based on a finding that the child's impairment(s) functionally equaled" the severity of a listed impairment, the ALJ "determines whether the child's impairment(s) at the time of the CPD now functionally equals the listings." *M.C. by Buford v. Comm'r of Soc. Sec.*, Case No. 20-CV-1173-SCD, 2021 WL 5105170, at *4 (E.D. Wis. Oct. 12, 2021). A child's impairment functionally equals the severity of a listed impairment if the impairment causes one severe limitation or two marked limitations in the following functional domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *See Gabriel P. v. Kijakazi*, No. 21-cv-1984, 2022 WL 3700828, at *1 (N.D. Ill. Aug. 26, 2022). At step three, "the agency determines whether the child is currently disabled considering all impairments she has now, including impairments not present or considered in the CPD." *M.C. by Buford*, 2021 WL 5105170, at *5. This determination entails its own three-step process. "First, the agency determines whether the child has a medically determinable impairment or combination of impairments that is severe." *Id.* "Second, the ALJ considers whether the child's severe impairment meets or equals a listed impairment." *Id.* "Third, the agency considers whether the severe impairment functionally equals a listed impairment." *Id.*

The Court reviews the ALJ's decision to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

**Discussion**

The ALJ concluded that K.A.T. had experienced medical improvement since the CPD because his ADHD was controlled with medication, his behavior at school

improved during the 2023 school year, an individualized education plan (IEP) and teacher questionnaires reflected overall improvement, and his mood improved with psychiatric medication. [26-1] 18. The ALJ then concluded that K.A.T.'s impairments at the time of the CPD no longer functionally equaled a listed impairment because K.A.T. now had no or less than marked limitations in the six functional domains. [*Id.*] 21-22, 23-24. Finally, the ALJ concluded that K.A.T. was not disabled as of March 1, 2023. The ALJ found that K.A.T. had multiple severe impairments–mood disorder, ADHD, learning disorder, and enuresis–but that these impairments did not meet, medically equal, or functionally equal the severity of a listed impairment. [*Id.*] 25-27.

Plaintiff contends that the denial of benefits should be reversed and the case remanded because substantial evidence does not support the ALJ's ruling that plaintiff has less than marked limitations in the six domains of functioning. In support, plaintiff argues that the ALJ found that the March 2023 IEP demonstrated that K.A.T.'s functional abilities had improved but did not reconcile that finding with the multiple accommodations that, according to the IEP, K.A.T. needed to succeed in school. [30] 10-12. Plaintiff maintains that the ALJ ignored a questionnaire completed by one of K.A.T.'s teacher reflecting that K.A.T. had multiple "serious" or "very serious" functional problems while heavily relying on different teacher statements reflecting that K.A.T.'s limitations were less severe. [*Id.*] 12-14. For the following reasons, the Court agrees that the ALJ's decision is not supported by substantial evidence and remands for further proceedings.[3]

"An ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but he must build a logical bridge from the evidence to his conclusion." *Gene L. v. Bisignano*, No. 25 C 5599, 2026 WL 102975, at *5 (N.D. Ill. Jan. 14, 2026). "When constructing this bridge, an ALJ must analyze all relevant evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Diane O. v. Bisignano*, No. 22 C 6666, 2025 WL 3707330, at *3 (N.D. Ill. Dec. 22, 2025). "[A]s with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Bakke v. Kijakazi*, 62 F.4th 1061, 1069 (7th Cir. 2023) (internal quotation marks omitted).

The ALJ did not comply with these standards when determining the degree of K.A.T.'s functional limitations.

## A.    Reliance on IEP

First, the ALJ's decision rests heavily on her finding that the March 2023 IEP reflected "overall improvement" in K.A.T.'s abilities. [26-1] 18; *see also* [*id.*] 19 (same);

---

[3] Because this issue is dispositive, the Court does not discuss plaintiff's other ground for remand.

[*id.*] 20-21 (improvement in ability to attend and complete tasks); [*id.*] 23 (IEP "documents that his emotional regulation has improved"); [*id.*] 25 (IEP "shows improvement with psychiatric and ADHD medications"). While certain portions of the IEP are consistent with a finding that K.A.T.'s functional abilities had improved since the CPD, other portions of the IEP not specifically discussed by the ALJ documented what appear to be significant concerns regarding K.A.T.'s functioning. Most notably, the IEP reflects that K.A.T.'s IEP care team agreed that he would be afforded 17 different accommodations in each of five separate classes (English Language Arts, Mathematics, Science, Social Studies, and World Language). *See* 26-3 [1075-77]. These accommodations included (1) giving verbal directions in clearly stated steps, (2) extending K.A.T.'s time-on-task for completing class assignments and homework by 50 percent, (3) explaining directions and giving concrete examples, (4) asking K.A.T. to repeat directions back to confirm that he understood them, (5) testing only one concept at a time, (6) providing K.A.T. with visual cues, and (7) providing motivation and verbal rewards on a daily basis. [*Id.*]. K.A.T. was also afforded similar but less extensive accommodations in three other classes (Art, Music, and Computer). [*Id.*] 1077-78. Despite her heavy reliance on the IEP to uphold the denial of benefits, the ALJ never mentioned K.A.T.'s need for these accommodations, how these accommodations reflected on his functional abilities, and whether these or similar accommodations were in place at the time of the 2017 CPD. *See N.S.W.S. by & through Guy S. v. Bisignano*, No. 1:24-cv-1044-MJD-RLY, 2025 WL 1605317, at *3 (S.D. Ind. June 6, 2025) (remanding where ALJ selectively relied on portions of IEP but ignored relevant portions of IEP, such as that "[c]laimant's accommodations include extended time for rests and assignments"); *cf. McKee o/b/o HPM v. Comm'r of Soc. Sec.*, Cause No. 1:24-cv-129-SLC, 2025 WL 778755, at *6-7 (N.D. Ind. Mar. 11, 2025) (affirming denial of benefits where ALJ reasonably evaluated multiple IEPs in record, including "later IEPs [that] do not reflect a regression in academic ability or a change in classroom accommodations").

Similarly, the ALJ highlighted positive statements in the IEP made by some of K.A.T.'s teachers but ignored less optimistic statements made by others. In this regard, K.A.T.'s Human Geography teacher believed that K.A.T. required assistance to "identify important information in a text" and "struggles with writing a claim and locating 3 pieces of supporting details to prove his claim." [26-3] 1071. This instructor continued: K.A.T. "require[s] support with analyzing his evidence and explaining how the evidence proves his claim" and–consistent with several accommodations called for by the IEP–would "benefit[ ] from summarizing information," "explain[ing] directions and giv[ing] concrete examples," and "provid[ing] visual clues and guides[.]" [*Id.*] 1071. K.A.T.'s Digital Imaging teacher stated that K.A.T. "moves slower on his own," "does not take the initiative and is frequently behind," and "rarely makes use" of instructor-offered support. [*Id.*]. Finally, K.A.T.'s Biology and Spanish teachers believed that K.A.T.'s "main deficit appears to be his confidence in his own abilities" and noted that he "test[s] poorly sometimes." [*Id.*] 1071-72. While the Court does not suggest that these comments, standing alone, required the ALJ to find that

4

K.A.T. had marked or severe functional limitations, they are, on their face, inconsistent with the ALJ's bottom-line conclusion that the IEP demonstrated only that K.A.T. had improved since the CPD.

### B.   Teacher Questionnaires

Second, the ALJ failed to explain how she considered a significant piece of evidence that was favorable to plaintiff's claim: a June 2023 questionnaire completed by Terrell Thorpe, K.A.T.'s Algebra teacher. *See* [26-1] 322-29. Thorpe's questionnaire addressed K.A.T.'s ability to function in the same six domains addressed by the ALJ. According to Thorpe, K.A.T. had "serious" or "very serious" problems[4]–most of which were evident on a daily basis–in the following domains:

*Acquiring and Using Information*:
- o Providing organized oral explanations and adequate descriptions (very serious)
- o Expressing ideas in written form (serious)
- o Learning new material (serious)

*Attending and Completing Tasks*:
- o Focusing long enough to finish assigned activity or task (serious)
- o Carrying-out multi-step instructions (very serious)
- o Changing from one activity to another without being disruptive (serious)
- o Completing class/homework assignments (very serious)
- o Working without distracting self or others (very serious)
- o Working at reasonable pace/finishing on time (serious)

*Interacting and Relating with Others*:
- o Seeking attention appropriately (serious)
- o Following rules (serious)
- o Using language appropriate to the situation and listener (serious)

*Caring for Himself*:
- o Handling frustration appropriately (serious)
- o Being patient when necessary (serious)
- o Using good judgment regarding personal safety and dangerous circumstances (serious)
- o Knowing when to ask for help (serious)

*See* [26-1] 323-37.

---

[4] Thorpe rated K.A.T.'s abilities on a 1-5 scale, with 1 meaning "No Problem," 2 meaning "A slight problem," 3 meaning "An obvious problem," 4 meaning "A serious problem," and 5 meaning "A very serious problem." [26-1] 323.

The ALJ did not come to grips with the essence of Thorpe's questionnaire. When the ALJ evaluated K.A.T.'s limitations in the domain of moving about and manipulating objects, the ALJ noted that Thorpe "reported no issues in this domain." [26-] 23. But when the ALJ considered K.A.T.'s limitations in the domain of interacting and relating with others, the ALJ noted–without further elaboration–that Thorpe's questionnaire "reflected problems" before concluding that K.A.T.'s limitations were less than marked. [*Id.*] 22. The ALJ did not consider Thorpe's statements that K.A.T. had serious or very serious limitations in acquiring and using information, attending and completing tasks, and caring for himself when she evaluated K.A.T.'s functional abilities in those domains. The Court recognizes that the ALJ was not required to discuss every piece of evidence and was subject to only the most minimal articulation requirement, *see Warnell*, 97 F.4th at 1053, but even these forgiving standards cannot excuse the ALJ's errors here. The ALJ clearly believed that input from K.A.T.'s teachers was a critical source of evidence, as she repeatedly recounted teacher statements (*e.g.,* K.A.T. could complete assignments independently, was respectful to teachers and interacted well with his peers, and was "a joy to have in class") in concluding that K.A.T. had improved. *See* [26-1] 21-22. But the ALJ did not engage with Thorpe's questionnaire–which provided significant evidence that appears to contradict the ALJ's finding that K.A.T. was no longer disabled–except at the most superficial level (*e.g.*, noting that it "reflected problems") and only when it supported her finding that K.A.T.'s functional impairments were less than marked. *See Oliver on behalf of D.O. v. Kijakazi*, Case No. 20 C 4982, 2021 WL 5299788, at *5 (N.D. Ill. Nov. 15, 2021) (remanding where "ALJ referenced a sentence from [teacher's] questionnaire" but "failed to explain why he gave no weight to the other portions of the questionnaire which might support a finding that D.O. has a marked limitation in caring for himself."). Given the ALJ's failure to meaningfully evaluate Thorpe's questionnaire, the Court cannot conclude that the ALJ's evaluation of K.A.T.'s functional limitations was supported by substantial evidence.

## C.    Functioning Relative to Non-Disabled Peers

Finally, and perhaps most fundamentally, the ALJ focused heavily on whether K.A.T. had improved since the CPD, but she never "described what [K.A.T.'s improvement] meant for [K.A.T.'s] functioning *relative to h[is] non-disabled peers.*" *Johnson o/b/o D.J. v. Berryhill*, No. 17 C 1871, 2018 WL 1726422, at *3 (N.D. Ill. Apr. 10, 2018) (emphasis added). "The functional equivalence rules require [the ALJ] to begin by considering how the child functions every day and in all settings compared to other children the same age who do not have impairments." SSR 09-1p, 2009 WL 396031, at *2 (Feb. 17, 2009). There is essentially no trace of that analysis in the ALJ's decision, as the ALJ focused instead on whether K.A.T. had improved in the 2023 school year and due to a medication change vis-à-vis his prior, disabled condition. *See Tylecia M. o/b/o C.O. v. O'Malley*, No. 21 CV 2392, 2024 WL 1050177, at *9 (N.D. Ill. Mar. 11, 2024) (remanding where "ALJ heavily relied on C.O.'s

6

improved ability to control his behavior after he began taking new medications in May 2020," but failed to "address whether the new medication resulted in C.O. being able to reach the level of function that a non-impaired child of his age should have in this domain"). On remand, the ALJ must ensure that K.A.T.'s functioning is evaluated "relative to h[is] non-disabled peers." *Johnson*, 2018 WL 1726422, at *3.[5]

*   *   *

Given the multiple serious errors in the ALJ's decision, the Commissioner's arguments for upholding the denial of benefits are not persuasive. The Commissioner argues that the ALJ permissibly relied on the opinion of a state agency reviewer, who found that K.A.T. had no marked or severe functional limitations. *See* [37] 5, 7; *see also* [26-1] 92-96. But the state agency psychologist provided her opinion in September 2022, more than eight months before Thorpe completed his questionnaire. *Compare* [26-1] 96 *with* [*id.*] 329. In any event, that the ALJ may have been "partially persua[ded]" by the state agency reviewer's opinion, *see* [*id.*] 25, cannot excuse the failure to engage in with Thorpe's questionnaire. *See Bakke*, 62 F.4th at 1069. The Commissioner also argues that plaintiff "ignores the entirety of the March 2023 IEP," which contains evidence that was consistent with the ALJ's decision. *See* [37] 5. The premise of the Commissioner's argument is false, however: plaintiff's opening brief expressly acknowledges that the "IEP contains a significant discussion of the minor's strengths and how those strengths can be used to his advantage," but urges–correctly–that the ALJ was obligated to consider what K.A.T.'s need for multiple accommodations says about his functional abilities. [30] 10. Finally, the Commissioner asks the Court to excuse the ALJ's cherry-picking of the IEP because the ALJ supposedly "considered a similar line of evidence, noting that plaintiff [*sic*] continued to face problems and may need redirection when in a loud or chaotic environment." [37] 5 (internal quotation marks omitted). But this argument wrongly assumes that the remainder of the IEP that the ALJ did not discuss was duplicative of the one or two pieces of favorable evidence that the ALJ discussed. As discussed in more detail in section B., *supra*, that is simply not an accurate interpretation of the record.

---

[5] Plaintiff did not raise this issue as a stand-alone ground from remand, but the ALJ's error in this regard is so readily apparent from her decision that the Court has exercised its discretion to raise the issue and so that it can be addressed on remand.

7

## Conclusion

Plaintiff's motion for summary judgment [29] is granted and defendant's motion for summary judgment [36] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 27, 2026**

8